

ENTERED
03/07/2013

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § § | CASE NO: 11-36325 |
| PATRICK HOJOON KANG, SONYA YEONSOOK KANG | § § § | CHAPTER 7 |
| Debtor(s). | § § § | JUDGE ISGUR |
| LOWELL T CAGE | § § | |
| Plaintiff(s), | § § § | |
| vs. | § § § | ADVERSARY NO. 12-03233 |
| SUNG KANG | § § § | |
| Defendant(s). | § § | |

## MEMORANDUM OPINION

Sung Kang and his wife are awarded a declaratory judgment that they own 100% of the beneficial interest in the real property located at 5217 Havenview Drive, Houston, Texas (the "Property").

The Estate (as the Debtors' successor-in-interest) retains all indemnification rights against Sung Kang and his wife, which rights are secured by the Property.

### Background[1]

The material facts are not in dispute.

In October 1999, title to the real property located at 5217 Havenview Drive, Houston, Texas was transferred to Patrick Hojoon Kang and Sonya Yeonsook Kang (the "Debtors") via a warranty deed. The Debtors took out a loan to purchase the Property, signed a promissory note

---

[1] This section is taken from the parties' joint pretrial statement. (ECF No. 16)

to repay the loan, and granted a deed of trust on the Property to secure the promissory note. A $5,000.00 down payment was made towards the purchase price. Sung Kang (Patrick Kang's father and the defendant in this action) and his wife (together, the "Parents") paid the down payment.[2]

On October 16, 1999, the Parents moved onto the Property. The Parents have resided on the Property at all times since. The Parents have made all of the monthly payments due under the promissory note.

The Debtors have never resided on the Property. The Debtors have never provided the Parents with any money to make the monthly mortgage payments.

There were no written agreements between the Debtors and the Parents concerning ownership of the Property. No written agreement existed between the bank extending the loan and the Parents concerning ownership of the Property. There was, however, an oral agreement between the Parents and the Debtors that: (i) Patrick Kang's (and his wife) would take out the mortgage loan; (ii) the Parents would make the down payment on the Property; (iii) the Parents would make all mortgage payments on the Property instead of the Debtors; and, (iv) the Property would be owned by the Parents.

Other than obtaining the initial loan from the bank, the Debtors have provided no monetary assistance with respect to the home. The Parents have made each monetary outlay related to the Property themselves, including the down payment, every mortgage payment, property tax payments, and all other obligations.

On July 27, 2011, the Debtors filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code. On the petition date, the Debtors were listed in the real property records as

---

[2] Although Sung Kang is the only named defendant in this action, Sung Kang's wife would appear to have an equal interest in the Property.

the owners of the Property.

On May 9, 2012, Lowell Cage (as Trustee for the chapter 7 bankruptcy estate) filed this adversary proceeding. Cage is seeking to use his § 544(a)(3) strong-arm powers to avoid the Parents' interest in the property and for turnover of the property under § 542.[3]

Although the parties filed competing motions for summary judgment, (ECF Nos. 15-16), the Court deferred a ruling on the motions. A trial was held on November 30, 2012.

The Court allowed the parties to submit additional briefing after trial.

### The Parties' Contentions

The Court understands the parties' initial contentions, contained in their joint pretrial report, to be as follows. (ECF No. 16).

Cage contends that because the Property was in the Debtors' name as of the Petition Date, the Property comes into the estate. To the extent the Parents purchased the Property, the fact that the Parents allowed the Debtors to take title to the Property is presumed to be a gift under Texas law.[4] To the extent the Parents claim an interest in the Property under an oral contract, the contract is unenforceable due to the Statute of Frauds and the Trustee is able to avoid Defendant's unrecorded interest as a bona fide purchaser pursuant to Section 544(a)(3).

Sung Kang contends that he and his wife have equitable title to the Property based upon the circumstances surrounding its purchase and the fact that they have continued to make payments for the property. Sung Kang contends that the Property is held in a resulting trust by the Debtors and that he and his wife are the beneficiaries of that resulting trust. As the Parents

---

[3] Although the Parents did not file a counterclaim seeking a declaratory judgment as to their beneficial interest in the property, the Trustee consented to having this issue tried as well.

[4] Although this is a contention listed by the Trustee, the same joint pretrial statement contains facts (stipulated to by the Trustee) indicating that the Parents and the Debtors did not intend for this to be a gift. Any presumption of a gift is thus rebutted by this joint stipulation of facts.

have equitable title to the Property and the Debtors only legal title, the chapter 7 estate has no interest in the property. Finally, the effect of the resulting trust is that the Trustee is unable to utilize his strong-arm powers to avoid the Parents' equitable interest.

After the trial, the Court allowed both sides to file additional pleadings on two important issues.

One was, even if a resulting trust exists (with legal title held by the Debtors and equitable title held by the Parents), whether § 544(a) trumps § 541(d)—potentially allowing the Trustee to avoid the Parents' equitable interest despite the existence of a resulting trust. This issue only arises if a resulting trust exists. As the Court finds that a resulting trust does exist, as explained in Part I of the opinion, Part II addresses whether § 544(a) trumps § 541(d).

The other issue was, if § 544(a) does trump § 541(d) (and therefore the Trustee's strong-arm powers are potentially available), whether the Trustee had constructive notice of any facts that would prevent their use. *See In re Hamilton*, 125 F.3d 292, 298 (5th Cir. 1997) (holding that facts of which a hypothetical purchaser would have implied notice under state law may prevent the use of the § 544(a) strong-arm powers). As the Court finds that § 544(a) does not trump § 541(d), this issue need not be addressed.

## Analysis

### I. Resulting Trust

Given the stipulated facts, a resulting trust arose upon conveyance of the Property to the Debtors. The Parents are the beneficiaries of that resulting trust. The Estate (as the Debtors' successor-in-interest) holds mere legal title to the Property, while the Parents hold equitable title.

The Second Restatement of Trusts addresses resulting trusts in these types of scenarios:

> Where a transfer of property is made to one person, and another person at
> the time of the transfer undertakes an obligation to pay the purchase price,

a resulting trust arises in favor of the latter person, unless he manifests an intention that no resulting trust should arise.

RESTATEMENT (SECOND) OF TRUSTS § 456 (1959).[5]  This exact fact situation is detailed in the same section:

> *Purchase on credit of transferee, purchaser agreeing to exonerate him.*  The rule stated in this Section is applicable where the transferee undertakes an obligation to the vendor to pay the purchase price, but another person at the time of the purchase agrees with the transferee to pay the purchase price to the vendor. . . .
>
> **Illustrations:** 3. X is the owner of Blackacre. A purchases Blackacre from X, the purchase price to be paid in one year.  There is an oral agreement between A and B that B will give X his note for the purchase price and that Blackacre will be transferred to B, and that A will pay B's note to X and that B will then convey Blackacre to A.  X transfers Blackacre to B who gives his note to X.  B holds Blackacre upon a resulting trust for A.

RESTATEMENT (SECOND) OF TRUSTS § 456 cmt. d (1959) (emphasis in original).

The transferees retain certain rights to protect themselves in case of nonpayment by the true purchasers:

> In all these cases the transferee has a security interest in the property to indemnify him in the event that he may be compelled to convey the property to the other person until the other has paid the vendor or has given the transferee a bond of indemnity or otherwise secured him against the risk of loss; and if the transferee has paid the vendor he cannot be compelled to convey the property to the other until the other has reimbursed him.

RESTATEMENT (SECOND) OF TRUSTS § 456 cmt. d (1959).

Texas law defines the parties' relative property interests.  *In re Haber Oil Co., Inc.*, 12 F.3d 426 (5th Cir. 1994) ("[I]n the absence of controlling federal bankruptcy law, the substantive

---

[5] There is a Third Restatement on the law of trusts.  The Third Restatement does not include all of the various resulting trust fact scenarios found in the Second Restatement.  The Third Restatement indicates that it is in general accord with the Second Restatement as to resulting trusts.  RESTATEMENT (THIRD) OF TRUSTS § 9 Reporter's Notes (2003).

nature of the property rights held by a bankrupt and its creditors is defined by state law."). The Restatements are not law, nor do they necessarily reflect the state of the law in Texas.

As there is no Texas Supreme Court case directly on point, the Court must rule as it believes a Texas court would were this case before it. *USSC Group Inc. v. Kimball Inc.*, 2009 U.S. App. LEXIS 715 (5th Cir. Jan. 15, 2009) (citing *Dawkins v. White Products Corp.*, 443 F.2d 589, 591 (5th Cir. 1971) ("It is, of course, much preferable for the federal court to apply state law as precisely articulated by a state court of highest jurisdiction. However, if no state court decision precisely on point is available to guide the federal court, we are compelled to decide to the best of our ability what the state court *would* hold if this case were *now* before it.") (emphasis in original)). The Court finds that a Texas court would rule that the Property is held by the Debtors in a resulting trust for the benefit of the Parents and, more generally, that the Second Restatement accurately describes the parties' relative interests given these facts.

> The Texas Supreme Court addressed this issue, albeit in dicta:
>
>> It is familiar law that a [resulting] trust must result, if at all, at the very time a deed is taken and the legal title vested in the grantee. No oral agreement before or after the title is vested, will create a resulting trust, **unless the payments are made in pursuance of an enforceable agreement upon the part of the beneficiary existing at the time the deed is executed**. The trust must arise out of the transaction itself. The fundamental idea is that the beneficial title follows consideration, and unless the one claiming the trust has paid consideration, **or become bound for same**, at the very time of the making of the deed, no trust is created.
>
> *Wright v. Wright*, 132 S.W.2d 847, 849 (Tex. 1939) (emphasis added). Two years later a Texas appellate court held that a resulting trust arose under similar circumstances:
>
>> If one agrees to advance the consideration to acquire property in his own name for the benefit of another and the conveyance of the legal title is made to him in accordance with such agreement, a trust arises if the beneficiary is legally bound to repay the money advanced to purchase the property.

*Vicars v. Quinn*, 154 S.W.2d 947, 948-49 (Tex. Ct. App.—El Paso 1941). The appellate court also noted the well-established rule that parol evidence may be used to prove the existence of such a trust. *Vicars v. Quinn*, 154 S.W.2d at 949 (citing *Miller v. Thatcher*, 9 Tex. 482 (1853)).

The recent appellate case of *Williams v. Robinson* is instructive. 2009 Tex. App. LEXIS 5982 (Tex. Ct. App.—Tyler 2009). Although the court found that a resulting trust did not arise, this was because the party claiming to be the beneficiary of the resulting trust failed to produce any evidence that she agreed, prior to or concurrent with the conveyance, to be obligated to pay the related note. 2009 Tex. App. LEXIS 5982 at *5 ("We have searched the record, and we are unable to find evidence that Beatrice, either before or concurrently with the conveyance to Patricia, promised to be responsible for paying the indebtedness against the land."). As resulting trusts must arise, if at all, at the time of the initial conveyance, the appellate court could not affirm the trial court's ruling that the plaintiff was the beneficiary of a resulting trust given the evidentiary record before it. 2009 Tex. App. LEXIS 5982 at *21.

In reviewing the applicable law, the *Williams v. Robinson* court stated that, were the facts as they are in this adversary proceeding, a resulting trust would arise:

> A resulting trust will arise from the purchase of land on credit even though the grantee gives her note for the purchase price, if the trust claimant can establish that she, before or concurrently with the conveyance to the grantee, became bound to pay the note or to pay the grantee for the money advanced on the grantee's credit.

2009 Tex. App. LEXIS 5982 at *4 (internal citations omitted). The court noted that the Texas rule is in line with the Second Restatement and cited to the same section (§ 456) discussed above. The court further ruled that the transferee (the Debtors in this case) would hold a security interest in the trust property to guarantee indemnity. 2009 Tex. App. LEXIS 5982 at *4.

It is undisputed that before or concurrent with the initial conveyance of the Property to the Debtors, the Parents and Debtors agreed that the Parents would be obligated to pay the note

(secured by a Deed of Trust on the Property). As a result, a resulting trust arose at the time of the conveyance. The Estate (as successor-in-interest to the Debtors) holds legal title to the Property in a resulting trust for the Parents, who have equitable title.

## II.   Section 541(d) versus Section 544(a)

Section 541(a) brings into the estate all of the debtor's legal or equitable interests in property. 11 U.S.C. § 541(a)(1).

Section 541(d) states:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest, such as a mortgage secured by real property, or an interest in such a mortgage, sold by the debtor but as to which the debtor retains legal title to service or supervise the servicing of such mortgage or interest, becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d). The Property falls under § 541(d), as the Debtors hold only legal title and lack any equitable interest. Accordingly, the Property comes into the estate under § 541(a), but only to the extent of the Debtors' legal interest.

This raises the issue of the interaction between the Trustee's § 544 strong-arm powers and property governed by § 541(d). The strong-arm powers "serve essentially to marshall all of the debtor's assets, including some that the debtor itself could not recover, in order to enhance the resources available to the pool of creditors." *In re Quality Holstein Leasing*, 752 F.2d 1009, 1014 (5th Cir. 1985). One of the § 544 strong-arm powers is the ability to avoid unrecorded interests in property. The Parents' equitable interest in the Property is unrecorded.

The Fifth Circuit has previously addressed this issue as to § 541(d) property subject to a constructive trust. The Fifth Circuit held that trustees may not use the § 544 strong-arm powers to avoid certain interests in property subject to a constructive trust:

> As a general rule, it must be held that section 541(d) prevails over the trustee's strong-arm powers. Although those powers allow a trustee to assert rights that the debtor itself could not claim to property, Congress did not mean to authorize a bankruptcy estate to benefit from property that the debtor did not own. Where state law impresses property that a debtor holds with a constructive trust in favor of another, and the trust attaches prior to the petition date, the trust beneficiary normally may recover its equitable interest in the property through bankruptcy court proceedings.

*In re Quality Holstein Leasing*, 752 F.2d 1009, 1013-14 (5th Cir. 1985). The Fifth Circuit limited its ruling to prepetition constructive trusts. *Quality Holstein Leasing*, 752 F.2d at 1014 n.10 ("We emphasize that section 541(d) overcomes the trustee's section 544 powers only where state law confers equitable title on a third party effective prior to the commencement of the bankruptcy case."). The holding is further limited to only certain types of constructive trusts, as will be discussed in detail below. Section 541(d) does not trump § 544(a) in all situations where state law imposes a constructive trust.

The Fifth Circuit does not appear to have addressed this issue as it relates to § 541(d) property held in a resulting trust. The Trustee argues that "the Fifth Circuit has only limited the trustee's strong-arm powers in cases of express trusts, statutory trusts and constructive trusts." (ECF No. 17 at 3). As the Fifth Circuit does not appear to have addressed a resulting trust scenario, this statement means little. The issue is whether the reasoning in *Quality Holstein Leasing* extends to § 541(d) property covered by a resulting trust.[6]

The Trustee seeks to differentiate situations involving § 541(d) resulting trust property by arguing that courts have only applied the *Quality Holstein Leasing* holding where wrongdoing or breach of fiduciary duty by the debtor precipitated the imposition of the constructive trust. (ECF No. 17 at 3). While this might be true, the Trustee's statement implies that the policy behind

---

[6] Or, at least, a resulting trust arising under these facts. It is possible that, as with constructive trusts, § 541(d) might not always trump § 544(a) where state law imposes a resulting trust.

*Quality Holstein Leasing* is either punishing debtors for misconduct or protecting victims of debtor misconduct.

The Court disagrees with the Trustee's understanding of *Quality Holstein Leasing*. The reasoning behind the Fifth Circuit's holding that § 541(d) occasionally trumps § 544(a) is that the purpose of the strong-arm powers is not to allow the estate to benefit from property the debtor never owned. *Quality Holstein Leasing*, 752 F.2d at 1013-1014 ("Although those powers allow a trustee to assert rights that the debtor itself could not claim to property, Congress did not mean to authorize a bankruptcy estate to benefit from property that the debtor did not own.").[7]

A closer examination of *Quality Holstein Leasing* reveals that the question of when § 541(d) trumps § 544(a) cannot turn on the presence or absence of debtor misconduct. In that case, the plaintiff-appellant argued that the debtor's fraud caused the loss of its security interest in property, rendering it an unsecured as opposed to a secured creditor. *Quality Holstein Leasing*, 752 F.2d at 1014. The Fifth Circuit stated that, even if Texas law would impose a constructive trust in this situation, § 541(d) would not trump the § 544(a) strong-arm powers. *Quality Holstein Leasing*, 752 F.2d at 1014 ("Even assuming Texas would permit impression of a constructive trust, however, we disagree with the conclusion that [plaintiff-appellant] may overcome the trustee's strong arm."). The Fifth Circuit contrasted the actual fact pattern with a hypothetical situation where the debtor's fraud resulting in the unwitting relinquishment of ownership by a property's true owner:

> [Plaintiff-appellant] concedes that its status as a holder of an unperfected security interest places it squarely within the ambit of the trustee's strongarm authority. Yet it cannot satisfactorily explain why it should receive different treatment on account of [the debtor's] alleged fraud. Plaintiff-appellant does not claim that [the debtor] defrauded it of its

---

[7] The use of the term "owned" in this manner is problematic. In either a resulting trust or a constructive trust scenario legal title is held by the debtor.

> property but that [the debtor] duped [the true owner] into transferring the [property, resulting in the loss of plaintiff-appellant's security interest]. **Fraud such as that may preserve the true owner's equitable interest, but it does not improve the status of a creditor of the bankruptcy creditors.**

*Quality Holstein Leasing*, 752 F.2d at 1014-15. Given this important distinction noted by the Fifth Circuit, it is clear that the answer to when § 541(d) trumps § 544(a)(3) does not turn on the presence or absence debtor misconduct.[8]

The answer turns on whether the use of § 544(a) would result in the estate benefitting from § 541(d) property the debtor never owned.[9] This may occur, as hypothesized in *Quality Holstein Leasing*, where a debtor's fraud results in the unwitting relinquishment of a true owner's ownership interest. In these examples, the true owner does not intend to transfer ownership in the property. Assuming state law imposes a constructive trust to protect the true owner, § 541(d) would trump § 544(a). This situation may also arise in a situation devoid of fraud. Here, equitable title was to be held at all times by the Parents. The Debtors were never meant to hold any interest in the Property except legal title in trust for the benefit of the Parents.

Given the reasoning behind *Quality Holstein Leasing*, this is a situation where § 541(d) must trump § 544(a). Using § 544(a) to avoid the Parents' interest in the Property would not be a marshalling of the Debtors' assets. This would be an example of allowing the bankruptcy estate to benefit from property the Debtors never "owned."

---

[8] Statements in later Fifth Circuit cases appear to broaden the ruling of *Quality Holstein Leasing*. *See in re Haber Oil Co. Inc.*, 12 F.3d 426, 436 (5th Cir. 1994) ("We have thus consistently recognized that § 541(d) accords the beneficiary of a constructive trust, properly imposed under state law, the right to recover the trust property from the bankruptcy trustee or the debtor. Because § 541(d) excludes property subject to a constructive trust from the bankruptcy estate, we have also held that § 541(d) prevails against the trustee's strong-arm powers under § 544.") These statements are dicta. Moreover, they appear in a case citing *Quality Holstein Leasing* in support. *Haber Oil Co. Inc.*, 12 F.3d at 436. These later cases do not overrule *Quality Holstein Leasing* holding's that § 541(d) does not automatically trump § 544 any time that state law imposes a constructive trust.

[9] Again, use of the term "owned" in this manner creates difficulties.

The Trustee may not use the § 544(a) strong-arm powers to avoid the Parents' interest in the Property.

### III. The Issue of Notice

Section 541(d) trumps § 544(a). Therefore, as stated above, the Court need not address whether, were the § 544(a) strong-arm powers available, the Trustee had constructive notice of certain facts that would prevent their use.

### IV. The Parties' Relative Rights in the Property

The Property comes into the estate, but only to the extent of the Debtors' legal interest. 11 U.S.C. § 541(d). *Quality Holstein Leasing*, 752 F.2d at 1012 (quoting *Georgia Pacific Corp. v. Sigma Service*, 712 F.2d 962, 968 (5th Cir. 1983) ("The rule is elementary that the estate succeeds only to the title and rights in the property that the debtor possessed, although the trustee is armed, of course, with the special rights and powers conferred upon him by the Code itself. Therefore . . . the estate will generally hold such property subject to the outstanding interest of the beneficiaries.") (internal quotations omitted)).

The Estate retains legal title, but it is subject to the Parents' full equitable interest in the property (unavoidable by § 544(a)(3)). *Quality Holstein Leasing*, 752 F.2d at 1012. Furthermore, the Parents (as the resulting trust beneficiaries) are entitled to a declaration of an equitable interest to the property. *Quality Holstein Leasing*, 752 F.2d at 1012. Although this would normally require a request for affirmative relief, the Trustee stipulated to trying this action in conjunction with the § 544 and § 542 actions.

The Estate (as the Debtors' successor-in-interest) retains a lien interest in the Property to secure its indemnity rights against the Parents.[10]

---

[10] The Court recognizes that this lien interest will cloud the title. Until the debt is repaid, the Parents will not have clear title to the Property. The Trustee is free to sell his lien interest.

**Conclusion**

The Court will issue a Judgment in accordance with this Memorandum Opinion.

SIGNED **March 6, 2013.**

*[signature]*
Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE